**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 10-10089-WEB-1** |
| | ) | |
| **JAMES BUTLER,** | ) | |
| **Defendant** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT**
**OF DEFENDANT JAMES BUTLER'S MOTION TO SUPPRESS**
**EVIDENCE OBTAINED AS A RESULT**
**OF THE EXECUTION OF A SEARCH WARRANT**
**FOR CAMP LONE STAR, COMANCHE COUNTY, KANSAS**

COMES NOW the Defendant, James Butler, by and through his attorney, Kurt Kerns of Ariagno, Kerns, Mank & White, and hereby submits to the Court his Memorandum in Support of Motion to Suppress Evidence. In support of this motion, counsel for James Butler shows to the Court the following:

**BACKGROUND**

Based upon information obtained during an investigation of James Butler and his operation of a hunting camp known as Camp Lone Star, Comanche County, Kansas, United States Fish and Wildlife Service Special Agent John T. Brooks applied for a warrant to search Camp Lone Star. Based on Agent Brooks' affidavit, a search warrant was obtained on April 2, 2009, to search Camp Lone Star. The warrant was executed on April 8, 2009, and various items were seized. The government has now charged James Butler with offenses under the Lacey

Act, 16 U.S.C. § 3371 et seq., and intends to use against Mr. Butler evidence that was seized during the execution of the warrant. For the following reasons, none of this evidence seized pursuant to the search warrant is admissible at trial.

## ARGUMENT

### The Information in the Search Warrant Application was Insufficient To Support a Finding of Probable Cause To Search Camp Lone Star

Agent Brooks' affidavit submitted in support of his request for the search warrant for Camp Lone Star failed to set forth facts which would allow a neutral and detached magistrate to conclude that there was probable cause to believe that a violation of the Lacey Act was being committed at that location or that fruits, contraband or evidence of such a crime were then located on the premises. ***Illinois v. Gates***, 462 U.S. 213 (1983).

A law enforcement officer seeking the issuance of a search warrant must present to the magistrate facts supporting probable cause to believe that contraband, fruits of a crime and/or evidence of a crime are presently located at the place to be searched:

> Basic to search warrant protections is the requirement of probable cause. Its function is to guarantee a substantial probability that the invasions involved in the search will be justified by discovery of offending items. Two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched . . . .

Comment, 28 U. Chi. L. Rev. 664, 687 (1961). Counsel for Mr. Butler submits

that the application for search warrant failed to show probable cause that evidence of a crime would be found at Camp Lone Star.

**The Application contained insufficient information Concerning the reliability of the confidential informant**

Agent Brooks' affidavit in support of the application for search warrant relies in large part on information provided by a confidential informant. However, there was insufficient information in the affidavit to allow the issuing magistrate judge to make a determination as to the veracity of the anonymous informant or the reliability of his or her information.

While the credibility of an informant no longer hinges upon the strict ***Aguilar-Spinelli*** test, those factors remain relevant under the totality of the circumstances test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*See* ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317 (1983); ***Aguilar v. Texas***, 378 U.S. 108 (1964); ***Spinelli v. United States***, 393 U.S., 238 410 (1969).

The courts have allowed the government to establish in a variety of ways the reliability of confidential informants used in obtaining search warrants. One method has been to present numerous informants corroborating one another. *See* ***United States v. Wright,*** 171 F. Supp.2d 1195 (D. Kan. 2001) (three informants all corroborated one another's allegations). Similarly, in ***United States v. Le,*** 173

F.3d 1248, 1267 (10th Cir. 1999), the Court said: "The affidavit contained information provided by two different informants whose stories were remarkably consistent. '[C]onsistency between the reports of two independent informants helps to validate both accounts.' ***United States v. Schafer,*** 87 F.3d 562, 566 (1st Cir. 1996) (other citations omitted)."

Courts have also looked to the detail in statements given by informants to establish their reliability. For example, in ***United States v. Pinales***, 1989 WL 8059 (D. Kan. 1989), the informant described, by caliber and brand, each of five firearms that she claimed were in the defendant's house, and provided photographs of the defendant holding the firearms. *See also* ***United States v. Scalia,*** 993 F.2d 984, 987 (1st Cir. 1993) (information provided to agent by CI with no criminal record and who, from personal knowledge, described interior and contents of residence with such precision as to provide considerable intrinsic support for the informant's ability to convey reliable information).

Further, the courts have also found sufficient reliability if the officers included information in the affidavit to show that facts provided by this informant had proven true in the past. "Prior experience with an informant permits an agent to vouch for the reliability of a confidential informant's statement based on personal knowledge." ***United States v. Holmes,*** 175 F.Supp.2d 62 (D. Me. 2001).

Furthermore, while the tip of an ordinary citizen informant might be presumed reliable, such treatment is not accorded a tip from a criminal informant:

> Courts are much more concerned with veracity when the source of information is an informant from the criminal milieu rather than an average citizen who has found himself in the position of a crime victim or witness.

2 W. LaFave, *Search and Seizure* § 3.4 at p. 219 (4th ed. 2004).

Agent Brooks says nothing about the informant being reliable in the past. No information is given as to whether the informant was facing criminal charges him- or herself based on admitted violations of the Lacey Act; or whether he or she was given any sort of consideration–financial or otherwise–for making these allegations. Because the application for search warrant was devoid of facts by which the issuing judge could have fairly assessed the credibility of the informant or the reliability of his or her information, the search warrant should not have been issued.

**The Officers Exceeded the Scope of the Warrant's Authorization By Seizing Items Not Named in the Warrant**

The seizures of items not specifically named in the warrant were warrantless seizures and the government cannot bear its burden of demonstrating that said seizures were justified by any recognized exception to the warrant requirement of the Fourth Amendment. ***Coolidge v. New Hampshire***, 403 U.S. 443 (1971).

The law enforcement officers executing the search warrant exceeded the scope of the warrant's authorization by seizing items not specifically named in the warrant without probable cause or any other constitutionally permissible justification. The officers so far exceeded the scope of any search which was purportedly authorized by the warrant that the search which occurred amounted to a general exploratory search prohibited by the constitution. ***Walter v. United States***, 447 U.S. 649 (1980); ***Coolidge v. New Hampshire***, 403 U.S. 443 (1971); ***Texas v. Brown***, 460 U.S. 730 (1983); ***United States v. Leon***, 468 U.S. 897 (1984).

**The Government Will Be Unable to Bear its Burden of Proving That the Officers' Reliance on the Search Warrant Was Objectively Reasonable, and Thus the "Good Faith" Exception Of *United States v. Leon* Is Inapplicable to this Case**

The government will be unable to bear its burden of proving that it is appropriate to apply ***United States v. Leon***, 468 U.S. 897 (1984), in this case. The government has the burden of proving the applicability of ***Leon***. *See* ***United States v. Chandler***, 18 F. Supp. 2d 1240 (D. Kan. 1998) ("The government, rather than the defendant, bears the burden of proving that the agent's reliance upon the warrant was objectively reasonable.").

The Court in ***Leon*** set forth four situations in which the good faith exception would not apply:

> [1] Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . .

> . . [2] The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . ; in such circumstances, no reasonably well trained officer should rely on the warrant. [3] Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." . . . . [4] Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

468 U.S. at 923.

The standard is an objective one -- what a reasonably well-trained officer should have known about Fourth Amendment law, not merely whether the particular officer was aware of the law under consideration. ***Leon***, 468 U.S. at 919 n. 20 ("We emphasize that the standard of reasonableness we adopt is an objective one . . . . The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits . . . ."). *See also* ***United States v. Leary***, 864 F.2d 592, 607 (10th Cir. 1988) ("In determining whether the exception should be applied, the "good-faith" inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."); *cf.* ***United States v. Peltier***, 422 U.S. 531, 542 (1975) ("If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, *or may properly be charged with knowledge*, that the search was unconstitutional under the Fourth Amendment." (emphasis added)).

Finally, in applying ***Leon*** this Court is urged to keep in mind one jurist's observation that "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." ***United States v. Zimmerman***, 277 F.3d 426, 437 (3rd Cir. 2002) (quoting ***United States v. Reilly***, 76 F.3d 1271, 1280 (2nd Cir. 1996)).

1.

*Agent Brooks' Application for Search Warrant Was So Deficient In Showing Probable Cause That None of the Executing Officers Could Have Harbored an Objectively Reasonable Belief That Probable Cause Existed*

The good faith doctrine of ***Leon*** does not apply to "a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" ***Leon***, 468 U.S. at 923 (1984). Counsel for Mr. Butler submits that there are no facts in the affidavit which would lead to a reasonable belief that evidence of crime would be located at Camp Lone Star at the time the warrant was sought or executed.

2.

*The Judge Issuing the Search Warrant Abandoned His Judicial Role by Simply Deferring To Agent Brooks' Unsupported Conclusions*

The good faith doctrine of ***Leon*** also does not apply if "the issuing magistrate wholly abandoned his judicial role [such that] no reasonably well trained officer should rely on the warrant." ***Leon***, 468 U.S. at 923. An issuing magistrate who simply defers to the unsupported conclusions of an officer

applying for a search warrant abandons his judicial role such that no reasonably well-trained officer should rely on the warrant. *See, e.g.*, ***State v. Lum***, 27 Kan. App. 2d 113, 120 (2000) (refusing to apply ***Leon***; "[t]he magistrate's actions cannot be a mere ratification of the bare conclusions of others"); ***State v. Probst***, 247 Kan. 196, 203-05 (1990) (affirming trial court's own conclusion that ***Leon*** did not apply because he abandoned his judicial role when he issued a search warrant based on insufficient probable cause).

In the absence of sufficient facts in the application for search warrant to support a finding of probable cause, the issuing judge in this case simply deferred to Agent Brooks' conclusions, and thereby abandoned his judicial role such that no reasonably well-trained officer should have relied on the warrant.

3.

*The good faith doctrine cannot save*
*unlawful warrantless seizures or search warrant executions*

The good faith exception to the exclusionary rule in ***United States v. Leon***, 468 U.S. 897 (1984) does not apply to warrantless seizures or to the execution of a search warrant. "[I]f a warrant has been improperly executed, the good faith exception will not save the ensuing search." ***United States v. Young***, 263 Fed. Appx. 710, 715-16 (10th Cir. 2008) (citing ***United States v. Medlin***, 798 F.2d 407, 410 (10th Cir. 1986)).

**The Fruits of the Above Fourth Amendment Violations**
**Must Be Suppressed**

It has long been established that evidence or statements which were obtained

pursuant to any invalid search warrant are inadmissible as "fruits of the poisonous tree." *See* ***Wong Sun v. United States***, 371 U.S. 471, 485-88 (1963); ***United States v. Lin Lyn Trading, Ltd.***, 149 F.3d 1112, 1116 (10th Cir. 1998); ***United States v. Hatfield***, 333 F.3d 1189 (10th Cir. 2003). In this case, the physical evidence seized from Camp Lone Star, and any other evidence, tangible or intangible, obtained as a result of the search on April 8, 2009, all constituted fruit of a Fourth Amendment violation.

**Conclusion**

The searches and seizures conducted in the above-captioned case on or about April 8, 2009, were accomplished in violation of the Defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. All evidence, tangible and intangible, is the fruit of the unconstitutional searches and seizures as set forth above and must be suppressed.

Respectfully submitted:

ARIANGO, KERNS, MANK & WHITE, L.L.C.

BY /s/Kurt P. Kerns
Kurt P. Kerns #15028
Ariango, Kerns, Mank & White L.L.C.
328 North Main Street
Wichita, KS 67202
(316) 265-5511
Kurtpkerns@aol.com
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above Motion to Join was filed and served electronically pursuant to the CM/ECF system on November 22, 2010, on all counsel of record.

/s/ Kurt P. Kerns
Kurt P. Kerns