IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
v. ) No. 10-10089-01-WEB
)
JAMES BOBBY BUTLER, JR., )
)
        Defendant. )
)

**Memorandum and Order**

This matter came before the court on June 21, 2011, for a hearing on defendant James Butler's objections to the Presentence Report and for sentencing. The court ruled orally on these matters at the June 21 sentencing hearing. This written memorandum will supplement the court's oral rulings.

*Background*. The defendant James Bobby Butler and his brother, Marlin Jackson Butler, were charged in a 23-count Indictment with offenses arising from their operation of "Camp Lone Star," a hunting club located in Comanche County, Kansas. On March 16, 2011, James Butler entered a plea of guilty to three counts: Count 1, charging a conspiracy to violate the Lacey Act [16 U.S.C. § 3371 et seq.] by engaging in conduct involving the sale and purchase of wildlife, namely white-tailed and mule deer, with a market value in excess of $350, by knowingly selling and transporting said wildlife in interstate commerce, knowing the wildlife to have been taken and possessed in violation of the laws and regulations of the State of Kansas; Count 8, charging a substantive violation of the Lacey Act in November of 2005, relating to the sale of guiding services and a hunting permit to "BS," knowing that this individual killed two white-tailed deer

with a permit valid for another county, the second of which was also in excess of his bag limit, and transporting the antlers from Kansas to Texas for taxidermy; and Count 21, charging obstruction of justice, arising from the defendant's attempt to conceal evidence – namely six mounted deer heads with antlers – to impair its availability for use in an official proceeding.

The sentencing was initially scheduled for June 2, 2011, but on May 20, 2001, the court granted a defense request for continuance. The court extended the time to file objections to June 11 and set the sentencing for June 21, 2011. On May 26, 2011, the court scheduled an evidentiary hearing relating to the sentencing of both defendants, anticipating that the same evidence would likely be relevant to both sentencing hearings. Counsel were directed to notify the court if no evidentiary hearing was required in connection with sentencing. On June 2, 2011, the court denied an additional motion to continue the evidentiary hearing and the sentencing.

On June 15, 2011, the court was notified by counsel for all parties that no evidentiary hearing was required. Accordingly, the court cancelled the hearing. Also on June 15, the parties formally filed their objections and responses to the Presentence Report, which had previously been submitted to the Probation Office. The defendant's filing includes approximately 32 objections to the Presentence Report. In connection with the objections, defense counsel e-mailed to the court various written materials, including an affidavit from defendant James Butler and one from co-defendant Marlin Butler. The Government attached various materials to its response, including agent reports recounting interviews with a number of individuals involved in the activities at Camp Lone Star. On June 20, 2011, the day prior to sentencing, defendant filed a Sentencing Memorandum, which expanded on certain of the objections, as well as arguing that a sentence of probation was warranted on the factors of 18 U.S.C. § 3553(a). The Government

filed its own Sentencing Memorandum the day of sentencing, which, in accordance with its obligation under the plea agreement, recommended a sentence of 41 months' imprisonment.

*Guideline Calculation and Objections*.

The Presentence Report found a base offense level of 6 under USSG 2Q2.1(a). Two points were added for an offense committed for pecuniary gain. USSG 2Q2.1(b)(1)(A). The Report added 8 levels pursuant to 2Q2.1(b)(3)(A)(ii), based on a finding that the market value of the wildlife involved in the offense was $120,000. A 4-level enhancement was added under 3B1.1 for being a leader or organizer of an offense involving at least five individuals. Finally, 2-levels were added for obstruction of justice under 3C1.1. A three-level reduction was granted for acceptance of responsibility, resulting in a total offense level of 19. The defendant was found to be in Criminal History Category II, resulting in an advisory sentencing range of 33-41 months imprisonment.

A. *Procedural objection*. The defense memorandum filed June 20 argued that the Government failed to satisfy its burden of proof with respect to the value and number of the deer involved by "simply providing the court with reports of investigation that the probation officer used to write the PSR...." Doc. 99 at 11. The defendant equates this with "simply adopting the presentence report" and asserted "there is not an evidentiary basis for finding James accountable for all the deer identified in the PSR." *Id*. Defense counsel raised the matter at the outset of the sentencing hearing, apparently objecting to the court's consideration of the agents' reports. To the extent the defense was simply asserting that witness statements in the reports should be rejected as unreliable, the court concludes, as set forth below, that the reports are sufficiently reliable to support the allegations in the Presentence Report. To the extent the defense objects to

the court's authority to even consider and evaluate the reliability of the reports for purposes of sentencing, the court concludes that the defense has waived any such objection. The court afforded both parties an opportunity for an evidentiary hearing, but both parties informed the court that a hearing was not needed, and it is clear that the parties agreed that the court could make any factual determinations from the written materials provided. This is confirmed by the understanding between counsel concerning the presentation of materials to the court and the defendant's memorandum filed June 15, which noted that "Both parties are submitting affidavits, excerpts of Reports of Investigation and stipulations from which the Court must resolve the factual disputes." Doc. 94 at 1.

    B. *Defendant's involvement*. The law is well established that a sentencing court may consider information that would be inadmissible at a criminal trial, including reliable hearsay.[1] The Government has provided numerous agent reports containing summaries of interviews of individuals involved in illegal hunting at Camp Lone Star. Those reports were provided to the defense and the defense was aware that the Government would rely upon them at sentencing. The court concludes that the statements of these individuals – and particularly their descriptions of the defendant's extensive involvement in and encouragement of illegal hunting at Camp Lone Star – are sufficiently reliable to support their probable accuracy. The court notes that most if not all of these statements were made against the penal interest of the persons involved, which provides some indicia of reliability. Moreover, the statements tend to be consistent with each other insofar as the defendant's knowledge and involvement are concerned, and they are

---

[1] *See e.g.*, USSG 6A1.2 ("the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

supported and corroborated by both circumstantial and physical evidence. By contrast, the defendant's affidavit, in the court's view, essentially denies that he entered into any conspiracy, and it appears to contradict allegations in Count 1 as to the manner and means of the conspiracy and the overt acts in furtherance thereof. Among other things, the defendant says "[h]unters were expected to engage in lawful hunting practices" at the Camp and that he did not condone hunting with a rifle out of season or hunting with a spotlight. He says violations of regulations "occasionally" occurred, and admits that he was involved in some tag violations, but "the others I learned about after the fact or through information I received from my attorney after this Indictment was returned. As these violations seemed to be the exception to the norm, neither I nor the other property owners took any significant steps to prevent those violations from occurring in the future." Defendant has provided an affidavit from his brother stating in part that "James has always supported full compliance with hunting regulations." The court finds the defendant's statements asserting limited knowledge of the illegal hunting going on at Camp Lone Star during the period of the conspiracy are not credible. The statements of hunters who interacted with the defendant show that he was in charge of hunting operations at the camp, that he not only gave permission but encouraged the illegal taking of deer by hunters in order to make more money, and that he instructed others on steps to take to keep law enforcement officers from discovering the illegal activities. The statements show that James and Marlin Butler worked together for their mutual benefit to profit from allowing a continuing pattern of unlawful hunting, and that they jointly undertook the criminal activity alleged in the PSR. Moreover, the acts of James and Marlin Butler alleged in the PSR were in furtherance of that joint activity and were reasonably forseeable to the defendant. With respect to credibility, the

5

court also notes that the defendant has a prior federal felony conviction, and that he obstructed justice in the instant case by attempting to get others to dispose of evidence after he learned law enforcement officers were investigating the illegal activities. In sum, the court finds that the defendant's statement to the court denying involvement or responsibility is not credible, that the offense conduct and the relevant conduct detailed in the PSR is more likely true than not true, and that the defendant is responsible for that conduct under the guidelines.

      C. *Value of the Deer*. The defendant objects to the PSR's calculation of the market value of the deer involved in the offense, particularly with respect to the report's use of the hunting or guiding fees charged by the defendants as a measure of market value. Although there is little authority on the question, the court agrees with *United States v. Atkinson*, 966 F.2d 1270 (9th Cir. 1992) that the amount a hunter is willing to pay for the opportunity to hunt may be considered as evidence of the market value of the wildlife. *See* Doc. 66 at 6. As the guidelines note, when a fair market retail price is difficult to ascertain, the court may make a reasonable estimate using any reliable information, including "the acquisition and preservation (e.g, taxidermy) cost." In this instance, where there is no ready market value and out-of-the-ordinary "trophy" animals are involved, the court concludes that the amount paid by hunters for guided hunts represents the most reasonable estimate of fair market value of the wildlife. The Presentence Report notes that this total sum comes to $120,000 for the 35 deer for which defendant is accountable under the guidelines. Even if a substantial reduction is made to reflect meals or other services provided by the defendants, the remaining value is well over the $70,000 value that gives rise to the same 8-level enhancement under the guidelines. The court therefore concludes that the calculation in the Presentence Report is correct.

Section 3553(a).

The defendant has provided an extensive memorandum to the court which argues, among other things, that the offenses do not merit prison time, that the defendant has been a good father to his daughter, and that he has extensive community support. It asks for a sentence of probation, which would allow the defendant to continue working at his present job. The Government, pursuant to the plea agreement, recommends a sentence of 41 months' imprisonment, 3 years' supervised release, a $25,000 fine, $25,000 in restitution, and a $300 special assessment.

The sentencing court must first calculate the Guideline range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors in section 3553(a), explaining any variance from the Guideline range by referencing the statutory factors. *Nelson v. United States*, 129 S.Ct. 890 (2009). Section 3553(a) essentially provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the following purposes: -the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In so doing, the court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of sentencing set forth above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense under the applicable sentencing guidelines; (5) policy statements of the Sentencing Commission; (6) the

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Based on the factors in Section 3553, the court concludes that a sentence of 41-months, at the high end of the guideline range, is sufficient but not greater than necessary to meet the purposes of sentencing. The court concludes that such a sentence is necessary to reflect the seriousness of the offenses, to provide adequate deterrence, and to protect the public from further crimes of the defendant. The court notes that the defendant has a prior felony conviction in federal court for money laundering in connection with a substantial drug operation. He was sentenced to 41 months in prison in that case. Despite this, the defendant has again chosen to engage in criminal activity on a substantial scale, and the evidence shows that he was the leader of the illegal activities at Camp Lone Star. It is also undisputed that he obstructed justice in an attempt to avoid responsibility for the offense, and – in the court's view – he is still attempting to avoid full responsibility. The court finds that restitution in the amount of $25,000 to the Kansas Department of Wildlife and Parks is fair and reasonable given the impact of the offenses on the state's resources. The court further finds that a special condition of supervision prohibiting the defendant during the period of supervision from hunting, trapping, or fishing, or accompanying others engaging in such activities, is necessary in view of the defendant's demonstrated history of violating regulations and laws governing activities of this type. Finally, the court directs that the $25,000 fine be directed to the Lacey Act Reward Fund, in accordance with the unopposed request of the Government for such disposition of the fine.

*Conclusion*.

The defendant's objections to the Presentence Report are DENIED. The court determines that a sentence of 41 months custody, together with the other terms and conditions stated at the sentencing hearing, is the appropriate sentence in this case under 18 U.S.C. § 3553(a).

The Probation Officer in charge of this case shall see that a copy of this order is appended to any copy of the Presentence Report made available to the Bureau of Prisons. IT IS SO ORDERED this __23rd__ Day of June, 2011, at Wichita, Ks.

> s/Wesley E. Brown
> Wesley E. Brown
> U.S. Senior District Judge